May it please the Court, Cheryl Gordon-McLeod on behalf of Mr. Swift. I wanted to turn briefly to the unit of prosecution issue. Please let me know if I'm not speaking loudly enough, because I think the unit of prosecution issue is so straightforward. The government charged and its proof support, well, you're laughing, but one cash, one transport. Only at the straightforward word. Well, let me note that I cited numerous cases from other jurisdictions holding that transportation of a certain cash of anything, be it illegal securities, illegal vehicles, or illegal bootleg records. If it was going to each different destination, each one would support a different unit of prosecution. But if it was a single cash and it was going to a single destination, then the John Pohl case, the Katowski case, the Carter case all compel the conclusion that it's a single unit of prosecution. Isn't there a big difference between transporting securities and transporting hazardous material? Well, I think the focus is on transport. Well, that's your focus. But if you look at what you're doing, it's different. The material is hazardous at each stop. It's not true securities. So you've got a precedent, but it's not a very – it doesn't fit very well to the transportation of hazardous. But I think it does, because I think the gravamen of the statute is transport.  That's what you're saying. Well, let's look at the structure of our statute. We're looking at the structure of 6928D, and it begins whoever transports, and then it details blah, blah, blah. The structure of each of the statutes that I cited to the Court, 2314, 2312, and the other one, is the same. It begins whoever transports, and then it lists the prohibited stuff that could be transports, whether it's vehicles, whether it was trucks, or whether it was something stolen. So the structure of the statute, of course, is what you've got to start with, the statutory language. If we compare the structures, we see that Congress is looking at the same thing, transport, and it's defined by those other cases in terms of each destination or possibly, as in the Carter case, each container. Whichever test you use here, we've got one red Matson container, one destination, that's Wai'anae, one contract entered into on one day. And I've got to say that the allegation in the indictment and the proof did not even say that the stop lasted for more than a few hours. It could have all occurred on February 7th of 2005, according to the indictment and according to the testimony. That's an interesting question, because when I'm trying to look at the documents that we have, it's not clear that anybody said exactly when the second transport took place. It's very wishy-washy. Now, if the question is, have you divided one transportation into two transportations, who has the burden of going forward with raising that question? Not who has the ultimate burden of persuasion. But since the claim isn't that it wasn't done, the claim is you split one action in one cause into two causes, who has the burden of presenting the issue first of all? Well, I think it's a double jeopardy issue, because unit of prosecution issues are properly classified as double jeopardy issues. It's something that the defense can raise. It need not be raised pretrial, because you can charge both of them pretrial. The bar, I mean, you can charge. That's not my question. I'm sorry. The question is who has the obligation of coming forward? Oh, if it's not clear. Wait a moment. With some evidence that you've obviously divided one transportation into two, and here's the reason. I apologize for the interruption. Because he only stopped to use the restroom. Because he only stopped for 10 minutes. Because he only did this. Here's our reason that we say, who has the burden of coming forward with that piece of evidence? Not who has the burden of persuasion. I'm not talking about that. Well, I think the government in the indictment bears the burden of charging crimes that are clearly separate. And if one looks at the face of the indictment, the dates overlap. The date for count two, I believe, is February 7th, or it's February 7th or 8th, if you look at ER 342. And if you look at ER 343, the dates are listed as February 7th to possibly February 16th. So we have an indictment that allows the possibility that the transport occurred on the same day. But nobody attacked the indictment. Nor need they have attacked it pretrial. Multiplicity is not a ---- But you didn't raise it at the trial, did you? No. Counsel for the defendant did not raise it. It's a plain error question. It's a plain error review. Agreed. But it's not something that would be raised pretrial. It would be something that would be raised at sentencing in terms of bar ---- that's the only time that the double jeopardy error occurs is when the court threatens to impose double punishments at the sentencing. The government's permitted to try on both of them. I would add, though, that even if the two legs of the journey had been separated by 48 hours or more, it still fails because under the analogous cases we've cited, it's a single transport to a single lot in Wai'anae. How about the case of I move guns from New Jersey to New York and then on to Puerto Rico? Is that two transportations possibly? I'm sorry. I'm not ---- Two different crimes? I'm not focusing on which case you're talking about on the transportation to Puerto Rico. Okay. Well, there is a case that says when you transport from New Jersey to New York, that's one crime. When you transfer from New York to Puerto Rico, that's a second crime. I don't think ---- Even though it's one transport, basically. I'm not focused. I apologize. I'm not focusing on whichever case you're referring to. The cases I've cited focus on both destination and container, number of containers. And on either count, we win. How about different drivers, different driver takeover? There are no cases that I know of that focus on the difference in driver or the difference in whether it was a FedEx or a Postman or the difference in anything else like that. In fact, the John Paul case, the securities that went from the United States to Geneva and then back to New York, it was obviously different carriers because they were going in different ways across the Atlantic. So I don't think the fact that the identity of the carrier was different is important, nor do any of the cases that I've seen. But the focus now is on, as you say, on transport, and that necessarily involves a transporter. And then your case doesn't exactly involve hazardous material. And yet all the other cases also involved a transporter. Those statutes also began whoever transports in interstate commerce a bad security, a bad vehicle, a bad record, a bad something. So the language is exactly the same, and they've come to the conclusion that I'm advancing. Well, I guess my first error is in characterizing that as the simple issue. And that's the problem, though. I mean, I wasn't doing that just to hassle you about a word. Because let's say, hypothetically, the panel was inclined toward your position. Can we really say that it's so clear-cut and so obvious that any competent district judge should be able to see and rule on it without the benefit of any objection? Can we really say that? Well, I think under Tan, T-A-N-N, the Third Circuit case, and Zalapa, the Ninth Circuit case, the answer is yes. Tan was the 922G case, the firearms violation case. No objection in the district court. No controlling Third Circuit decision. No decision on 922G from any other circuit. Yet the Third Circuit ruled there are analogous cases from all of the other circuits holding that this would be multiplicitous. Therefore, based on analogous cases, it's plain error. And then Zalapa. No, it would be obvious to the trial judge. Nobody raises it. I mean, everybody's sitting in the trial. There are two different things charged. And any competent trial judge sitting up there would say, my gosh, this looks like a duplicitous thing. Nobody's raised it, but it surely is duplicitous. And then you'd go to the cases and there would be a clear answer to them. And you'd go, my gosh, I'd be incompetent not to decide it. Correct? That's your position, I tell you. Unfortunately, I don't have to prove incompetence, Your Honor, and that's certainly not what I'm arguing. I'm arguing that you have to prove it. It's obvious that a competent trial judge would be able to do it. So what you're really saying is that any competent judge should just see the answer that it's just like that. At sentencing, yes. Not during the trial, because it's not an error. Multiplicity is not an error that needs to be raised prior to trial. The government's entitled to try them on both. They just can't obtain convictions on both. So why should the district judge figure it out at sentencing, particularly in a context where the world has changed, but the sentencing doesn't have any practical impact? I understand we've held in Zalapa and so forth. That doesn't take it out of plain air. But I'm not sure I understand why the district judge should figure that out for himself at that point in time. Well, I think it does have a practical impact. And if I do win on this issue or on one of the insufficiency of the evidence issues, the impact on sentencing, although it doesn't change the guidelines range, is this. A court cannot sentence based on any unconstitutionally obtained conviction. That's been the law since 1948. I think it's Townsend v. Burke. A conviction obtained in violation of the Double Jeopardy Clause is unconstitutionally obtained. We are entitled to resentencing despite whatever stipulations were entered into beforehand so that the judge in the first instance can decide now, based on Mr. Swift, presenting to him now, if he would impose a lower sentence without that conviction. Frankly, I don't hear an answer to my question there. I apologize. The question I'm posing is you're saying it's obvious the judge should figure it out at the time of sentencing. And I'm trying to figure out why, because given the sentence that was imposed here and given the way the guidelines work, which I should do those in reverse order, given the way the guidelines work and in light of the actual sentence imposed here, what is it about the second conviction or the second count for transport that should occur to the trial judge as having a differential impact? Well, I think you're asking me about the concurrent sentence doctrine, and I think that you're asking me if there's any additional harm that comes from a second conviction. Frankly, I don't think there is. But I understand the argument that there is. I'm focused on why it is this is plain. Following up on Judge Fernandez's question, when should the district judge have figured it out? And you gave the answer at the time of sentencing. And I'm trying to figure out why. Well, I think it's based on the case law from the other circuits, not necessarily from the Ninth Circuit. The John Paul case from 1984, the Katowski case from 1984, the Carter case from 1986. Been on the books for more than 20 years at the time of the sentencing. Never challenged, clear. And under Tan. In Zalapa, in Zalapa, we had where the court decided that it was plain error. The court that decided that went ahead and also noted that we had pretty clear case law from this court binding the district court with regard to the effect of a single firearm. Agreed. And I don't see anything quite analogous to that. I'd like to invite your attention to United States v. Tan. That's the case that do you – it's the Third Circuit case. So, of course, I'm inviting your attention to its persuasive value. But it was the same situation we have there. There was no binding Third Circuit authority on the specific multiplicity issue raised there under 922G. But the Third Circuit said, we've got the cases from other circuits. There's been no contradictory cases cited to us. And I've got to point out the government has not pointed out any contradictory cases to you. In fact, in this entire section of their brief, they cited zero cases. So that's why I think it was as plain here as it was in the Tan case. And I'll reserve my 40 seconds for rebuttal. A whole 50 seconds. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Aaron Abell on behalf of the United States. Stephen Swift knowingly transported and stored dangerous hazardous waste, what we would call PERC, without complying with the requirements of the Resource Conservation and Recovery Act, or RCRA, in Hawaii's approved program. Since the argument is focused on the second argument of Defendant Swift, I'll turn to that now. I think to say that the error was plain here just cannot be said. It is at least subject to reasonable dispute whether or not two transports occurred here. And to suggest that the district court judge should have brought this up on his own at sentencing, I think, just given the facts and the case law in this circuit, this does not meet the plain error standard. I'd just also like to kind of amplify that the testimony establishing the location of the container and its stop on the public street in front of Swift's office was different. There was one group of testimony that talked about it going from Martin Warehousing to the public street. And then another set of testimony talking about going from the public street to Swift's property on Lion Eye. So it's possible that a jury could have credited one group of testimony and evidence, concluded that there was one transport and not the other that Swift caused, or... Well, does anyone know what the jury decided? I mean, did we ask the jury whether it was one or two? They had two in front of them. Well, they convicted on both counts. I mean, so they found two and there was no challenge to... But we don't know whether they found that the stop in between was anything more than 10 minutes. I mean, we don't know anything really about the... Well, I will say that, you know, there was time for a new driver to come on board to hook his rig up. You wouldn't do that just if someone was taking a 10-minute break. I mean, there was hooking up the air hoses. Mr. Leong testified to that. And I think... What's your limiting concept in dividing things into two or three or four or 10 transportations? Suppose I stop for gasoline. Is that going to be a new transport when I start up again? I think, Your Honor, what's critical here is that the defendant is Stephen Swift. And I think a jury could reasonably conclude, and it wasn't plain air for the jury to conclude, that he directed two distinct transports. In fact, he doesn't really... Would you like to answer my question? If the defendant directed you to go from one place, stop at a gas station, stay there for a given amount of time, and then proceed somewhere else, that might be... Long enough to gas up. Because he knew that, you know, trucks do run out of gas. You know, what the heck. He says, stop at a gas station and gas up. Whether that would be charged as two different transports or not... Is it two different transports in your view? It could be if that's the direction that the defendant gives. So your view is that if I'm transporting something from San Francisco to Los Angeles and my boss says, you know, stop for gasoline. You can only go so far. Stop at Harris Ranch and get some gasoline and then go on. That's two transports. If he doesn't tell me to stop for gasoline, that's different. Suppose he's the boss. Suppose it's just Swift doing this himself the whole time. So he's not directing anybody to do anything. So Swift is driving this truck down and he stops for gasoline at Harris Ranch or someplace. That might not be two transports. If he stops for gasoline and decides to use the bathroom, is that two then? That might be. That might not be. But that's not the case. What if he decides to get lunch? These are all very difficult questions and may have been, may be charged differently. No, they're really not so difficult. They're really, maybe they are difficult. But what they're trying to decide is you're, in effect, saying, prosecute at his absolute discretion to chop things into little pieces if he wants to, you know, and just leave it up to us and trust us. And that's okay. I have a lot of trust in what government people do. But what I'm trying to say is, ask you is, so it stops outside his place and somebody hooks up the second rig, for whatever reason, I don't know, and takes it to the second place. And if that's 10 minutes or 1 hour or 30 days, you say it's the same thing. If I understand you. But that's correct in this case, because Mr. Swift, I mean, I think it's reasonable to conclude that he had different motivations for both of these transports, or a jury could conclude that. I mean, that's silly. If his place is halfway between the place he picked it up and the place it's going, his motivation might simply be, you know, I'm tired of driving. Or I want to check in my office. I'm having my guy take it the rest of the way. I mean, to say that it's two different motivations just because it stops temporarily, that doesn't really make a lot of sense. Well, Your Honor, I think in context, you know, this all was occurring on the 7th and 8th of February. The closing date for Martin Warehousing was the 9th of February. The property had to be clear on the 9th of February. So quite frankly, what I think happened is there was a rush to get stuff off the Martin Warehousing property, get it off, get it to my office as quickly as possible, and then I'll transfer it to Wyanite. And as Mr. Leong testified, it took two days to make the trip from our offices, Swift's offices, the public street, to Wyanite. So this was a taking all of the container and the trailers took two days in the end. But it was only one container, right? I saw that was kind of interesting because it looked like there were two, like he hooked it up, he hooked up and took something to the place, and then he hooked up his truck again and took another thing to the place. But I thought there was only one bin. There was one bin of hazardous waste, and that was in the- That was in two different trucks? No, that was in the red mats and container. As part of the deal that Swift brokered with Anchez, he had also kind of made a swap. Instead of charging him $5,000 to do the clean-up, or $15,000, he asked for $7,500 and some trailers. So that's what those other trailers were, I believe. I understand. But we only charged him with transferring the red mats and container. I'd also like to note- So it didn't necessarily take two days to transfer that. It might have only taken a couple hours. But the job that he was doing on Martin Warehousing property took, I mean, it took two days. The job is irrelevant. The only thing that's relevant is the problem. Well, I was- Wait a minute. Sorry. The problem is if he took the hazmat directly and took six days to take the rest of the stuff, that would be irrelevant, wouldn't it? So it doesn't matter how long it took him to take the other stuff. The question is how long it took him to take the hazmat, is it not? It is. I was trying to explain the motivation behind maybe trying to get the mats and container off the property immediately and just in front of the public, his offices on the public street. I mean, I also note in Katowski, one of the cases that Swift relies on, he talks about the ability to-they talk about the ability to abort. And here it's at least theoretically possible that he could have gotten a manifest for the second leg of the trip. He didn't do that. So I think actually Katowski actually helps our case. I've got to say that the factual scenario you just outlined suggested to me more like it was one transport. I mean, they want to get it off the property. It's going to take them a couple days to do it because they've got to get it as far as they can get on that first day. What about that suggests that there are two different acts or two different offenses or motivations? Because I think then the second-there were two different reasons for taking it to two different locations. I mean, counsel admitted that if something goes to two different- Was there any doubt where it was supposed to wind up? Well- It's not like he took it to one place and then said, okay, now we have to find another location. Because I understood the evidence. It was always destined for Waianae. The problem is they couldn't get it to Waianae in one jump. Well, that's one reading of the evidence. I mean, but I think it made a stop on the public street. I'll stop you there. If that's a reading of the evidence, and although you've made several references to the jury, but the jury wasn't asked to find anything here, and we can't discern from the jury's guilty verdicts on two separate crimes that they found that there were two separate crimes, two separate motivations, two separate anything. Because all they were asked, is he guilty on this? Is he guilty on that? And they didn't ask the multiplicity question. So, yeah, the evidence might show there were two separate, but how do we know that's what the determination was? Well, I think all I need to win on plain error review is for it to be reasonably disputable. And I think that is clear from the record. And I also know, you know, there was no objection. Wait a minute. I've got to stop you there. I'm not sure I understand that proposition. Whether or not he engaged in two, whether the evidence supports two distinct transports, that he caused two transports, that has to be subject to plain error. If, as defense counsel has told us, the proper time to bring this up would be at time of sentencing, and then it wouldn't be plain error. It would be the ordinary review. You'd be in exactly the same situation because the jury would already have come back, but you couldn't discern from anything. I mean, there's really not a different decision to be made at that stage than there is to be made here. But there was no, the defendant put on no evidence suggesting, I mean, all of his conduct, all the testimony suggested that this was treated as two different events. To suggest that on plain error review, the government had to anticipate this new argument and go, I mean, we would have possibly tried this case. Was there any evidence that at the time the first transport was done, a different destination was expected or intended? The fact that it went to the public street in front of Swift's office. That's where it ended up. And that's, he then directed, the testimony was that he then told Ms. Gallipan to direct Mr. Leong to move it from the public street to Winai. Is there any evidence on the question of whether when the first transport took place, the ultimate destination of the container was known? Well, other than the fact that that's where it ended up. And it was known to be there, that that's where Mr. Leong took it from. Well, couldn't he have left it on the public street? He could have. Indefinitely? I mean, he would have violated RCRA some more in other ways as well. He would have been storing it on a public street without a permit, just like he did on Winai. He wasn't charged with storing it there, was he? No, he was not. But he was charged with storing it on his property, the Winai property, without a permit. Do you think he was guilty of storing it there? Yeah, I mean, he very well could have been. I wasn't the charging officer, attorney. And, you know, as an indictment does charge, the length of time that it was there was ambiguous. And I think in the exercise of prosecutorial discretion, we didn't charge that. Unless the Court has any other questions on the three other issues, I'm happy to rest on our brief. Thank you, Your Honor. Thank you. Thank you. Rebuttal. Thank you, Your Honor. In answer to the Court's last question, there was proof that at the time they entered into the contract, it was going to one place, and that was Winai. Winai. Trust me, you have the one judge who knows, Winai. Thank you, Your Honor. Okay. ER-341 is the charging document. It says there was a single contract, and it says where it was going. Then Anshes testified, ER-258-261. He talked about that contract, and that contract was admitted as Exhibit 21. And it was talking about going to the same place, Winai. Very good. Thank you. As to which rule of interpretation applies, whether it's that the government only has to prove that it's reasonably disputable, there's another rule of interpretation at issue here, and that's the rule of lenity that applies when you're dealing with a unit of prosecution issue. Finally, as to the government's suggestion that he didn't get a manifest for the second leg of the trip, but he really could have, I want to call your attention to ER-163 and 64, where Crabb is testifying. And he testifies that at Swift's behest, he actually did get a manifest for the trip, and that it was for the trip to Winai. I think I'm over. Thank you, Your Honor. Thank you. We thank both counsel for your arguments. The case just argued is submitted.
judges: Noonan, Fernandez, Clifton